**FILED**

**MAR 2 3 2009**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

**NOT FOR PUBLICATION**

**ENTERED**

**MAR 2 4 2009**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>MICHAEL C. RANSBURY and<br>TERI L. RANSBURY,<br><br>              Debtors.<br>_____<br><br>GREGORY HAYS and<br>GRACE HAYS,<br><br>              Plaintiffs,<br><br>v.<br><br>MICHAEL C. RANSBURY and<br>TERI L. RANSBURY,<br><br>              Defendants. | Case No. 6:06-bk-10790-PC<br><br>Adversary No. 6:06-ap-01212-PC<br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br>Date:  March 3, 2009<br>Time:  9:30 a.m.<br>Place:  United States Bankruptcy Court<br>        Courtroom # 304<br>        3240 Twelfth Street<br>        Riverside, CA 92501 |

Defendants, Michael C. Ransbury and Teri L. Ransbury (collectively, "the Ransburys")

seek a summary judgment against Plaintiffs, Gregory Hays and Grace Hays (collectively, "the

Hayses") dismissing the Hays' causes of action under 11 U.S.C. § 523(a)(2)(A), (a)(4), and

(a)(6). The court, having considered the pleadings, evidentiary record, and arguments of counsel,

makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52(a)(1), as

incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy cases.

---

[1] The court also adopts and incorporates by reference into this Memorandum Decision the
Defendants' Statement of Undisputed Facts and Conclusions of Law in Support of Motion for
Summary Judgment, or in the Alternative for an Adjudication of Undisputed Facts, except
Conclusions of Law Nos. 6, 7, 8 and 9. To the extent that any finding of fact is construed to be a
conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is
construed to be a finding of fact, it is hereby adopted as such.

## I. STATEMENT OF FACTS

1

2      On April 13, 2006, the Ransburys filed their voluntary petition under chapter 7 of the

3   Bankruptcy Code.[2]  At that time, there was a lawsuit pending between the Hayses and the

4   Ransburys in Case No. GIC 841800, styled Hays v. Ransbury, et. al, in the Superior Court of

5   California, County of San Diego.  The Hayses had filed a second amended complaint in the state

6   court action on August 25, 2005, alleging causes of action for negligence, negligence per se,

7   fraud, breach of fiduciary duty, breach of contract, breach of implied warranties, strict liability,

8   negligent misrepresentation, and attorney's fees.  According to the complaint, the Hayses entered

9   into a contract with the Ransburys for the purchase of certain real property and improvements

10  located at 2520 Reche Road, Fallbrook, California, for the sum of $643,000.  The Hayses alleged

11  that the Ransburys made several misrepresentations to the Hayses at the time the property was

12  sold regarding the condition of the property.  The Hayses alleged that they discovered after taking

13  possession "significant structural defects, illegal and hazardous living spaces, illegal and

14  hazardous stair assemblies, illegal and hazardous electrical installations, illegal and hazardous

15  plumbing installations, defective and failing interior and exterior floor installations, leaks at the

16  windows, leaks at the roof surfaces, uneven floor systems, site flooding, defective and failing

17  exterior siding, mold, soil settlement, leaking and misaligned doors, cracking drywall, inadequate

18  weather resistence, non-conforming cabinets, leaking pond and illegally modified drainage

19  system."  The Hayses also alleged that the subject property became uninhabitable and that

20  Gregory Hays developed a tumor as a proximate result of alleged mold contamination.

21      On April 26, 2006, the Hayses filed a motion seeking relief from the automatic stay to

22  proceed with the state court litigation.  The Ransburys filed written opposition to the motion

23  _____

24  [2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
    Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and
25  Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to
    the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain
26  Federal Rules of Civil Procedure ("FRBP").

27

1  stating that the state court action did not "frame a basis for exception of a debt from discharge

2  under federal law," and therefore, the Ranburys would be forced to re-litigate the causes of action

3  in the event a complaint for nondischargeability was filed in the bankruptcy court.  After a

4  hearing on May 8, 2006, the court granted relief from the stay to permit the Hayses to proceed

5  with the state court litigation to judgment.  On June 2, 2006, an Order Granting Motion for Relief

6  from the Automatic Stay ("Stay Order") was entered which provided, in pertinent part:

7          "Moving parties may proceed in the above referenced proceedings in the Superior Court
         of the State of Californian [sic], County of San Diego against Debtors and all other
8        defendants.  However, any judgment or finding of the Superior Court as to the Debtors,
         including calculation of any damages, as to the Debtors, Michael C. Ransbury and Teri L.
9        Ransbury only, shall not be binding nor shall they have any collateral estoppel effect in
         any manner or proceeding before a United States Bankruptcy Court of competent
10       jurisdiction, including the calculation of any claim or the amount thereof in any adversary
         complaint whether under 11 U.S.C. 523 or 11 U.S.C. 727."

11

12  On July 17, 2006, the Hayses filed a complaint in this adversary proceeding against the

    Ransburys seeking a determination that the claims made the basis of the pending state court

13  action are nondischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).  Attached to the

14  Hays' adversary complaint were the following exhibits:

15
         a.      California Residential Purchase Agreement and Joint Escrow Instructions between
16               the Hayses and the Ransburys dated August 22, 2003;

17       b.      Real Estate Transfer Disclosure Statement dated August 25, 2003; and

18       c.      Second Amended Complaint for Monetary and Punitive Damages for Negligence,
                 Negligence *Per Se*, Fraud, Breach of Fiduciary Duty, Breach of Contract, Breach
19               of Implied Warranties, Strict Liability, Negligent Misrepresentation and
                 Attorneys' Fees filed in Case No. GIC 841800, styled Hayes v. Ransbury, *et al.*, in
20               the Superior Court of California, County of San Diego, on August 25, 2005.

21  The Ransburys filed an answer to the adversary complaint on August 18, 2006.  At the time, the

22  state court action remained pending between the parties.

23          On June 26, 2006, the state court action between the Hayses and the Ransburys was tried

24  before a jury.  On July 6, 2006, a mistrial was declared.  On December 5, 2006, a second trial of

25  the state court action was commenced without a jury.  Trial was concluded on January 3, 2007,

26  and the matter was taken under submission.

27

On January 17, 2007, a Decision was filed in the state court action containing detailed findings of fact and conclusions of law by the state court with respect to the causes of action alleged by the Hayses against the Ransburys.  In its Decision, the state court determined, in pertinent part, that:

a.   "With regard to the claims of fraud, the Court finds that the Defendants did not intentionally misrepresent the condition of the house.  There is no evidence that the Defendants suffered flooding during the time they occupied the house. . . there is no evidence that the Defendants were aware the water would cause damage to the house."

b.   "The Defendants disclosed a year round stream."

c.   "The absence of permitted plans, combined with the testimony of the Defendant that he made changes to the plans with the assistance of Ms. O'Brien, defeats the Plaintiff's burden of proof that Mr. Ransbury intentionally constructed the house in violation of the plans.  Further, the house passed all building inspections and that reinforced Mr. Ransbury's state of mind that the house was in compliance with all plans and codes."

d.   "With respect to the square footage, the Court finds the representation of 3,000 square feet in the MLS came from Susan Marsh [not the Ransburys]. . .  the misrepresentation would have been of the existence of a 'bonus room.'  There was no testimony explaining what a bonus room was or how that differed from attic storage that had been finished and looked like a room."

e.   "With respect to a misrepresentation of used beams, Exhibits 504 and 505 indicate that Ms. O'Brien approved the use of used beams."

f.   "Therefore, the Court concludes that the Plaintiffs have failed in their burden of proving any intentional misrepresentations by either of the Defendants."

The state court also determined that (a) the doctrine of implied warranty did not apply; (b) the Hays' negligence cause of action need not be addressed because damages were not established; and (c) the Hayses failed to prove that the Ransburys made any negligent misrepresentations. The Ransburys were awarded attorney's fees in the amount of $195,666.50 incurred in defending the Hays' claims.  A Judgment was entered for the Ransburys on February 15, 2007.  The Hayses appealed.

On February 26, 2007, the Ransburys filed a motion pursuant to F.R.Civ.P. 60(b)(1), as incorporated into FRBP 9024, seeking relief from the Stay Order and requesting that the Stay Order be amended to permit the state court judgment to have preclusive effect in the pending

1   adversary proceeding between the parties.  On March 22, 2007, the Hayses filed written

2   opposition to the motion.  After a hearing on April 5, 2007, the court granted the Ransburys'

3   motion.  On May 3, 2007, an Order Granting Debtors' Motion to Amend Order Granting Motion

4   for Relief from Stay ("Amended Order") was entered which stated, in pertinent part:

5           "[B]ecause the Movant/Debtors participated in the underlying State Court Proceedings
            (San Diego Superior Court case # GIC 841800) the [Stay Order] is hereby amended and
6           modified such that the principles of issue preclusion shall be applicable to the decisions
            affecting the Movants/Debtors in the pending State Court Proceedings."

7   The Hayses did not appeal the Amended Order, seek a reconsideration of the Amended Order

8   under FRBP 9023, nor relief from the Amended Order under FRBP 9024.

9           On December 23, 2008, the state court's judgment was affirmed by the California Court

10  of Appeals, Fourth Appellate District, Division One.  In its written decision, the appellate court

11  found with respect to Hays' intentional and negligent misrepresentation claims against the

12  Ransburys that the trial court's "findings were within the issues framed by the pleadings, and

13  support the judgment . . . ."

14          On January 20, 2009, the Ransburys filed their motion in this adversary proceeding

15  seeking a summary judgment on the Hays' claims under §§ 523(a)(2)(A), (a)(4), and (a)(6).  The

16  Ransburys allege the state court judgment against the Hayses is a final judgment adjudicating the

17  merits of all claims that were asserted, and could have been asserted, by the Hayses arising out of

18  the same transaction or occurrence made the basis of the adversary complaint, and therefore, the

19  state court judgment must be given preclusive effect so the Ransburys are not forced to re-litigate

20  issues that have already been resolved in their favor.

21          On February 10, 2009, the Hayses filed a written response opposing the motion on several

22  grounds.  First, the Hayses argue that the doctrines of issue and claim preclusion are discretionary

23  and ask the court not to apply these doctrines in order to avoid injustice.  Second, the Hayses

24  argue that issue preclusion does not apply because the Ransburys failed to establish that their

25  causes of action were actually litigated in the state court proceeding.  Third, the Hayses assert

26  that issue preclusion should not be applied because the Hayses did not have an adequate

27

1  opportunity or incentive to pursue all causes of action in the state court proceeding.  Finally, the

2  Hayses argue that they relied to their detriment on the language of the Stay Order, and therefore,

3  the Ransburys should not be permitted to benefit from issue preclusion at this time under the

4  doctrine of judicial estoppel.  On February 26, 2009, the Ransburys filed evidentiary objections

5  to the declaration of Grace Hays and a reply to Hays' opposition.[3]  At a hearing on March 3,

6  2009, the court considered the pleadings, summary judgment evidence, and arguments of

7  counsel, continued the matter pending a decision on or before March 27, 2009, and took the

8  matter under submission.

## II. DISCUSSION

10        This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

11  157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and

12  (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  To prevail under 11 U.S.C. §

13  523(a)(2)(A), (a)(4), or (a)(6), the plaintiff must establish the allegations of the complaint by a

14  preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).  Objections to the

15  dischargeability of a debt are to be literally and strictly construed against the objector and

16  liberally construed in favor of the debtor.  Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th

17  Cir. 1997).

18  A.  Summary Judgment Standard.

19        Summary judgment is appropriate "if the pleadings, the discovery and disclosure

20  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

21  that the movant is entitled to judgment as a matter of law."  F.R.Civ.P. 56(c).  "The purpose of

22

23  _____

24  [3] Movants' Evidentiary Objections to the Declaration of Grace Hays and Movants' Reply to
Plaintiff's Opposition to Motion for Summary Judgment on Claims Under [sic] U.S.C. Sections

25  523(a)(2)(A), (a)(2)(B) [sic] and (a)(6), or in the Alternative, for an Adjudication of Undisputed
Facts were filed and served less than 10 days prior to the hearing in violation of LBR 7056-1(d).

26  Because the papers were untimely, the court overruled Ransburys' evidentiary objections at the
hearing and has not considered the reply in adjudicating the merits of the motion.

27

1 | summary judgment is to avoid unnecessary trials when there is no dispute as to the [material]

2 | facts before the court." Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th

3 | Cir. 1994).  Under Rule 56(c), the moving party bears the initial burden to establish that there are

4 | no genuine issues of material fact to be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317,

5 | 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  "A 'material fact'

6 | is one that is relevant to an element of a claim or defense and whose existence might affect the

7 | outcome of the suit.  The materiality of a fact is thus determined by the substantive law

8 | governing the claim or defense." T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626,

9 | 630 (9th Cir. 1987).  Genuine issues of material fact are those "factual issues that make a

10 | difference to the potential outcome and 'that properly can be resolved only by a finder of fact

11 | because they may reasonably be resolved in favor of either party.'" Svob. v. Bryan (In re Bryan),

12 | 261 B.R. 240, 243 (9th Cir. BAP 2001) (quoting Anderson, 477 U.S. at 250).

13 |       Where the nonmoving party bears the burden of proof on a specific claim or defense at

14 | trial, the moving party may move for summary judgment based solely on the "pleadings,

15 | depositions, answers to interrogatories, and admissions on file." Celotex Corp., 477 U.S. at 324.

16 | There is no requirement "that the moving party support its motion with affidavits or other similar

17 | materials negating the opponent's claim." Id. at 323 (emphasis in original).  The burden then

18 | shifts to the nonmoving party to produce "significantly probative evidence" of specific facts

19 | showing there is a genuine issue of material fact requiring a trial.  T.W. Elec. Serv., 809 F.2d at

20 | 630 (citing F.R.Civ.P. 56(e)).  The nonmoving party cannot "withstand a motion for summary

21 | judgment merely by making allegations; rather, the party opposing the motion must go beyond its

22 | pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to

23 | interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, Inc., Sec.

24 | Lit., 277 F.3d 658, 666 (3d Cir. 2002).  If the nonmoving party fails to establish a triable issue on

25 | an essential element of its case and upon which it will bear the burden of proof at trial, the

26 | moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

27

- 7 -

1    B. Issue Preclusion.

2          Collateral estoppel, or issue preclusion, applies to nondischargeability proceedings in

3    bankruptcy court. Grogan, 498 U.S. at 284 n.11; Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329

4    F.3d 1119, 1123 (9th Cir. 2003); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824 (9th Cir.

5    BAP 2006). Bankruptcy courts have discretion to apply collateral estoppel, or issue preclusion,

6    in dischargeability proceedings. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367

7    B.R. 99, 107 (9th Cir. BAP 2007). Issue preclusion prevents a party from relitigating an issue

8    that the party has actually litigated and lost in a prior proceeding. See R.T.C. v. Keating, 186

9    F.3d 1110, 1114 (9th Cir. 1999); Roussos v. Michaelides (In re Roussos), 251 B.R. 86, 92 (9th

10   Cir. BAP 2000). Issue preclusion serves to protect litigants from multiple lawsuits, conserve

11   judicial resources, and encourage reliance on adjudication by reducing the likelihood of

12   inconsistent decisions. Allen v. McCurry, 449 U.S. 90, 94 (1980); see Lopez, 367 B.R. at 104

13   ("The doctrine is intended to avoid inconsistent judgments and the related misadventures

14   associated with giving a party a second bite at the apple."). See generally, C. Klein, et. al.,

15   Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J. 839, 852-58

16   (2005).

17         In determining the effect of a state court judgment, federal courts must apply that state's

18   collateral estoppel principles as a matter of full faith and credit. See Lopez, 367 B.R. at 105

19   ("The Full Faith and Credit Act requires that federal courts give state court judgments the same

20   preclusive effect those judgments would enjoy under the law of the state in which the judgment

21   was rendered."). For collateral estoppel to apply under California law, the issue sought to be

22   precluded must be identical to that decided in a former proceeding, and the issue must have been

23   actually litigated and necessarily decided in the former proceeding. Id. at 104. Furthermore, the

24   decision in the former proceeding must be final and on the merits; and the party against whom

25   preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

26   Id.

27

C.  Judicial Estoppel.

   The Hayses seek to invoke the doctrine of judicial estoppel as a defense to Ransburys'

motion for summary judgment.  Judicial estoppel is an equitable doctrine invoked by the court to

prevent fraud and abuse of the judicial process.  *See* Morris v. California, 966 F.2d 448, 453 (9th

Cir. 1991), *cert. denied*, 506 U.S. 831 (1992).  Judicial estoppel precludes a party from gaining

an advantage by asserting one position, and then later seeking an advantage by taking a clearly

inconsistent position.  *See* New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Hamilton v.

State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel also applies out

of "'general consideration[s] of the orderly administration of justice and regard for the dignity of

judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"

Hamilton, 270 F.3d at 782 (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  The

court considers three factors to determine whether to apply judicial estoppel:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'  Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus no threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Hamilton, 270 F.3d at 782-83 (quoting New Hampshire, 532 U.S. at 750-51 (internal citations

omitted)).  "The Ninth Circuit requires that the inconsistent position have been 'accepted' by the

first court."  Associated Vintage Group v. Sims (In re Associated Vintage Group, Inc.), 283 B.R.

549, 566 (9th Cir. BAP 2002) (quoting Hamilton, 270 F.3d at 783).  "The focus of reliance is

shifted from the opposing party to the court, which is, in effect, the victim."  Associated Vintage

Group, 283 B.R. at 566.  The meaning of "acceptance" in the bankruptcy context is construed

broadly "to protect the integrity of the bankruptcy process."  *See* Hamilton, 270 B.R. at 785.

   The Hayses point to the inconsistent position taken by the Ransburys with respect to the

language included in the Stay Order, but this issue was already litigated by the parties at the

1  hearing to amend the Stay Order and there is no evidence that the bankruptcy court was misled

2  by the change in the Ransburys' position when the Amended Order was entered on May 3, 2007.

3  On February 26, 2007, the Ransburys filed a motion pursuant to F.R.Civ.P. 60(b)(1), as

4  incorporated into FRBP 9024, seeking relief from the Stay Order and requesting that the Stay

5  Order be amended to permit the state court judgment to have preclusive effect in the pending

6  adversary proceeding between the parties. The Hayses had appealed the judgment. The

7  Ransburys filed the motion while the state court judgment was on appeal. In the motion, the

8  Ransburys argued:

9      "Respondents were recently successful in Superior Court in an action filed by Movants
       against Respondents and others. The Superior Court action involved a full and complete
10     trial and involved the same facts as alleged in the Nondischargeability Proceeding. Since
       Respondents were successful, collateral estoppel prevents Movants from proceeding in
11     this case. However, there is [ a Stay Order] that states collateral estoppel does not apply.
       Movants filed a Nondischargeability Complaint. Circumstances have changed such that
12     the [Stay Order] should be amended."

13  On March 22, 2007, the Hayses filed written opposition to the motion, stating:

14     "Certainly, had Debtors desired the benefit of collateral estoppel at the time of the
       motion, they could have advised the Court that they would accept an order which
15     provided for collateral estoppel. They did not. Having now chosen to fully litigate the
       matter and finding that the result was beneficial to them, they wish to now come back for
16     a "second bite at the apple." Because all parties contemplated and understood the
       potential ramifications of the [Stay Order] at the time that it was entered, there should be
17     no modification [of] the [Stay Order] under Rule 60(b)."

18  After a hearing on April 5, 2007, the court granted the Ransburys' motion. The Amended Order

19  entered on May 3, 2007, stated, in pertinent part:  ,

20     "[B]ecause the Movant/Debtors participated in the underlying State Court Proceedings
       (San Diego Superior Court case # GIC 841800) the [Stay Order] is hereby amended and
21     modified such that the principles of issue preclusion shall be applicable to the decisions
       affecting the Movants/Debtors in the pending State Court Proceedings."

22  The Hayses did not appeal the Amended Order, seek a reconsideration of the Amended Order

23  under FRBP 9023, nor relief from the Amended Order under FRBP 9024.

24     The Hayses claim that they relied to their detriment on the language of the Stay Order

25  and, as a result, did not have an incentive to fully litigate the merits of their claims against the

26  Ransburys in the state court action. However, the summary judgment evidence establishes that

27

- 10 -

1  the Hayses pursued the Ransburys through two trials in the state court.   After the first trial before

2  a jury ended in a mistrial, the Hayses waived their right to a jury trial and a court reporter.  Grace

3  Hays admits in her declaration in opposition to Ransburys' motion for summary judgment that:

> "In a effort to save money and resources, I hired – what I later found to be – an
> incompetent attorney who went to trial ill-prepared, *e.g.*, without proper experts,
> destructive testing, or investigative discovery."

6  The Ransburys did not derive unfair advantage simply because they actively defended themselves

7  against the Hays' claims at trial.

8      The Hayses further claim that they have new evidence to present that was not available to

9  them at the time they tried the state court action.  However, Grace Hays admits in her declaration

10  that she waited until *after* the trial to assemble "a new team of experts who obtained additional

11  evidence" to support claims that had already been adjudicated between the parties.  There is no

12  showing that this "additional evidence" is "newly discovered," *i.e.*, admissible and credible

13  evidence of facts that were in existence at the time of the original trial and would have made a

14  difference in the outcome of the litigation, but could not have been discovered by the Hayses

15  through the exercise of due diligence in time to move for a new trial.  More importantly, the state

16  appellate court specifically rejected the Hays' request to consider additional evidence on appeal

17  pursuant to CCP § 909, stating that "[b]ecause the judgment can be affirmed without

18  consideration of Plaintiffs' proffered evidence, and in fact the proffered evidence is solely

19  directed at undermining the judgment, we reject Plaintiffs' request under section 909."

20      Based on a consideration of the three factors set forth in <u>New Hampshire</u>, the court

21  declines to apply the doctrine of judicial estoppel to limit the preclusive effect of the state court

22  judgment between the parties.  To apply judicial estoppel to the facts of this case would increase,

23  rather than decrease, the risk of inconsistent decisions.

24  D. <u>Section 523(a)(2)(A)</u>.

25      Section 523(a)(2)(A) excepts from discharge in bankruptcy "any debt for money,

26  property, services, or an extension, renewal, or refinancing of credit to the extent obtained by

27

1 | false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To establish

2 | that a debt is nondischargeable under § 523(a)(2)(A), the plaintiff must show by a preponderance

3 | of the evidence that (a) debtor made a representation; (b) at the time, debtor knew the

4 | representation was false; (c) debtor made the representation with the intention and purpose of

5 | deceiving the creditor; (d) the creditor justifiably relied on the debtor's representation, and (e) the

6 | creditor sustained the alleged loss and damage as the proximate result of such representation.

7 | Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 827 (9th Cir. 2002); Turtle Rock Meadows

8 | Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

9 |     The court will give preclusive effect to the Judgment entered in Case No. GIC 841800,

10 | styled Hays v. Ransbury, et. al, in the Superior Court of California, County of San Diego, on

11 | February 15, 2007. The essential elements of issue preclusion under state law are present in this

12 | case. The Hayses and the Ransburys were parties to the prior state court action. The issues

13 | litigated in the state court, which form the basis for Hays' § 523(a)(2)(A), (a)(4), and (a)(6)

14 | claims against the Ransburys in this proceeding, involved the Ransburys' liability, if any, to the

15 | Hayses for alleged fraud and other causes of action based upon or arising out of the sale by the

16 | Ransburys to the Hayses of the real property and improvements located at 2520 Reche Road,

17 | Fallbrook, California, for the sum of $643,000. The factual issues were identical to the issues

18 | presented in this adversary proceeding. The Hayses and the Ransburys actively participated in

19 | the state court action, and had a full and fair opportunity to litigate these issues in the prior

20 | action. The Hayses lost in the prior state court action. The judgment entered by the state court

21 | after a trial on the merits is a final judgment that was affirmed on appeal. The state court

22 | judgment against the Hayses is a final judgment adjudicating the merits of all claims that were

23 | asserted, and could have been asserted, by the Hayses against the Ransburys arising out of the

24 | same transaction or occurrence made the basis of the adversary complaint.

25 |     In its Decision dated January 17, 2007, the state court made specific findings concerning

26 | the Hays' fraud claim against the Ransburys, concluding that the Hayses "failed in their burden

27 |

1   of proving any intentional misrepresentations by either of the" Ransburys. The Judgment of the

2   state court entered on February 15, 2007, not only stated that the Hayses would take nothing on

3   account of their claims against the Ransburys, but awarded the Ransburys the sum of

4   $195,666.50 in attorneys fees incurred in defending the complaint. Because the Hayses are

5   unable to establish a triable issue on any essential element of their § 523(a)(2)(A) claim, the

6   Ransburys are entitled to judgment as a matter of law.

7   E. Sections 523(a)(4) & (a)(6).

8           Section 523(a)(4) states that a discharge in bankruptcy "does not discharge an individual

9   debtor from any debt for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C

10  § 523(a)(4). A debt is nondischargeable under § 523(a)(4) where (a) an express trust exists; (b)

11  the debt was caused by fraud or defalcation, and (c) the debtor acted as a fiduciary to the creditor

12  at the time the debt was created. Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997),

13  citing Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987). Whether a relationship is a

14  "fiduciary" one within the meaning of § 523(a)(4) is a question of federal law. Mills v. Gergely

15  (In re Gergely), 110 F.3d 1448, 1450 (9th Cir. 1997); Lewis v. Scott (In re Lewis), 97 F.3d 1182,

16  1185 (9th Cir. 1996).

17          The Ninth Circuit has adopted a narrow definition of "fiduciary" for purposes of §

18  523(a)(4):

19          "[T]he fiduciary relationship must be one arising from an express or technical
            trust that was imposed before and without reference to the wrongdoing that caused
20          the debt."

21  Cantrell, 329 F.3d at 1125 (quoting Lewis, 97 F.3d at 1185). "Defalcation" is defined by the

22  Ninth Circuit as the "misappropriation of trust funds or money held in any fiduciary capacity; [or

23  the] failure to properly account for such funds." Banks v. Gill Distribution Centers, Inc. (In re

24  Banks), 263 F.3d 862, 870 (9th Cir. 2001); Lewis, 97 F.3d at 1186 (quoting Black's Law

25  Dictionary 417 (6th ed. 1990)). No degree of culpability need be shown in the Ninth Circuit to

26  make a debt nondischargeable as a defalcation under § 523(a)(4). An individual may be liable

27

- 13 -

1  for defalcation without having the intent to defraud. Lewis, 97 F.3d at 1187.

2          Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious

3  injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

4  A "deliberate or intentional injury" is required before § 523(a)(6) will render a debt

5  nondischargeable. See Kawaaukau v. Geiger, 523 U.S. 57, 61 (1998) (stating that

6  nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a

7  deliberate or intentional act that leads to injury"). Section 523(a)(6) requires separate findings on

8  the issues of "willful" and "malicious." The "willful" injury requirement of § 523(a)(6) is met

9  "when it is shown either that the debtor had a subjective motive to inflict injury or that the debtor

10 believed that injury was substantially certain to occur as a result of his conduct." Carrillo v. Su

11 (In re Su), 290 F.3d 1140, 1144 (9th Cir. 2002) (quoting Petralia v. Jercich (In re Jercich), 238

12 F.3d 1202, 1208 (9th Cir.), cert. denied, 533 U.S. 930 (2001)). A "malicious injury" involves

13 "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done

14 without just cause or excuse." Id. at 1146-47 (quoting Jercich, 238 F.3d at 1209). See, e.g.,

15 Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 829 (9th Cir. 2002) (holding that a state

16 court jury finding that the debtors "intentionally caused injury" to the creditor "without just

17 cause" was entitled to preclusive effect for purposes of § 523(a)(6)); Murray v. Bammer (In re

18 Bammer), 131 F.3d 788, 791 (9th Cir. 1997) (en banc) (stating that malice under § 523(a)(6)

19 "does not require a showing of biblical malice, i.e., personal hatred, spite or ill-will").

20          In response to the Ransburys' motion, the Hayses had the burden to produce significantly

21 probative evidence on each element of their claims under § 523(a)(4) and (a)(6) upon which they

22 would bear the burden of proof at trial. Because the Hayses have not established a triable issue

23 on the essential elements of their claims § 523(a)(4) and (a)(6), the Ransburys are entitled to

24 judgment as a matter of law.

25                              CONCLUSION

26          There being no genuine issue as to any material fact for trial, the court finds that the

27

- 14 -

1 | Ransburys are entitled to a summary judgment denying the relief requested by the Hayses under

2 | §§ 523(a)(2)(A), (a)(4), and (a)(6) as a matter of law.

3 |       A separate order and judgment will be entered consistent with this opinion.

4 | Dated: March 23, 2009

5 |                                          PETER H. CARROLL
                                            United States Bankruptcy Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

## NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) _____<u>MEMORANDUM DECISION</u>_
_was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of_ 3/23/09 ___, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Paul J Leeds    reisingc@higgslaw.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 9021-1.1**

| In re: | CHAPTER: |
| | |
| Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):

U.S. MAIL

James E Chodzko
PO Box 235647
Encinitas, CA 92023

David B Lally
26895 Aliso Creek Rd Ste B663
Aliso Viejo, CA 92656

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**